# Bohan *v.* Avoca Borough, Appellant.

*Boroughs—Streets—Gutters—Damages.*

Where a borough constructs gutters in a street in such a way as to cause the surface water of a large territory to be diverted from its natural flow, and to be gathered into a body and precipitated on the premises of the owner whose property abuts on the street, and the property is thereby injured, the borough is liable in damages.

*Municipal corporations—Evidence of acts of.*

The acts of a municipal corporation may be proved otherwise than by its records or some written document.

*Evidence—Cross-examination.*

In an action against a borough to recover damages for injuries resulting to property from the negligent construction of gutters, a witness, in his examination in chief, testified as to the physical nature of the street along which the gutters were made, the effect of their construction on plaintiff's property, and such was the general character and scope of his testimony in chief that it might be fairly inferred that the work was done by or under the direction of the municipal authorities, although he did not testify by whom the work was done.   *Held*, that the witness might be properly asked on cross-examination by whom the work of constructing the gutters was done.

*Cross-examination—Review.*

The range of cross-examination must, to a very great extent, be left to the sound discretion of the trial judge, and, unless that discretion has been plainly abused to the injury of the party complainant, it is not ground for reversal.

Argued April 11, 1893.   Appeal, No. 88, Jan. T., 1893, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1887, No. 490, on verdict for plaintiff, Paul Bohan.   Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMP-SON, JJ.

Trespass for injuries caused to plaintiff's house and lot by the construction of gutters.

At the trial, before RICE, P. J., plaintiff claimed that defendant constructed gutters in the street on which his property was situated, in such a way as to divert the surface water from its natural course, and cast it upon his premises.

Michael Whalen, defendant's witness, after testifying to the condition of the ravine, was asked : " Q. How long ago was that; before the gutters were put in? A. Long before the gutters were put in, yes, sir. Q. Whether or not the same territory now drained by reason of the grading of the streets was not drained formerly by this ravine, channel through there ? A. Yes, sir; that carried the water from considerably below Hawthorn street. It run up toward that ditch. I have lived on that corner for six years, and I ought to know it pretty well. Q. What is that about Hawthorn street? A. The water from below ran but little that way from Hawthorn street and below Hawthorn street, before they graded the streets; that formed a summit there when they graded the street, so part would go one way and the other part the other way, so as to divide up the force of the water. Q. Whether or not more water goes through and over Bohan's property since the guttering of the street than formerly went over it? A. I don't think there is half as much. The water is not in the land there was them days. The land is perfectly dry; there was an additional stream of water running there years ago. Q. Whether this gutter or culvert does not drain other territory than Main street? A. Why, it drains all from towards the head of No. 3 plane, that comes down on that slope down by property the back end of King's lot, and from ——'s dwelling down along that way towards Grove, down alleys and down through Michael Early's lot, and part of it goes to the corner and down the other way. Q. For how long a period of time? A. Since I have been living there. Q. Whether or not the paving of the gutters has increased the flow or volume of water there ? A. It has decreased it. I have explained that. There is a summit formed there at Corlis's property or——and part of this water runs down the Stegmaier property and the other part goes on from that street to the ditch. Q. Whether or not sidewalks are built in the borough of Avoca? A. Yes, sir. Q. Along on

the western side of Main street whether or not there are side-walks erected, and were before this gutter was paved? A. There was a little temporary sidewalk, but we never had what you might call sidewalks. Q. Well, sidewalks of any kind? A. Until the street was properly graded, then, of course, the town council forced the property holders to put down side-walks. We never had what you might call a sidewalk until that time. Q. Whether or not during the time you lived there, and before this grading spoken of—what was the formation of the road and the gutters previous to the time the street was graded there? A. Well, there was not much formation to that right along that neighborhood. There was a kind of a hole that in the spring and fall teams could hardly get out. I have seen teams, wagons with four horses, could not pull them out; and there was considerable filling done in that particular part of the town, stone packed down there by the hundred loads, right along there, kind of a swampy place. Q. Whether in your judgment Mr. Bohan's property has decreased in market value since the street was guttered or since the guttering was put there? A. I didn't think it ever had any value until the ditching and guttering was fixed up."

On cross-examination the witness was asked: "Q. You were burgess at the time this guttering was done? A. Yes, sir. Q. Done by the borough at the time you were burgess? (Ob-jected to). A. Done by the people. [Q. Done by the borough while you were burgess? A. No, sir." Objected to. Objec-tion overruled. Defendant's counsel states the objection as follows: (1) Because it is not cross-examination. (2) It is a part of plaintiff's case in chief and can be proved only by the records of the council whether it was done by the borough or not. Objections overruled, and bill sealed for defendant. "Q. Do you swear that it was not done by the borough, that the borough did not employ Mr. Westfield to do the work? A. It was done under the jurisdiction of the borough, but the people paid the money. Q. Who employed Mr. Westfield to do it? A. The town council."] [1]

Plaintiff's point, which was affirmed, is quoted in the opinion of the Supreme Court. Defendant's points were as follows:

"1. That no recovery can be had in this case, unless the jury are convinced, by the testimony presented, that the quantity

of water flowing down Main street through the culvert upon the property of the plaintiff has been increased, and that such increase has given to it a greater force of destructiveness, and that in consequence of the same the plaintiff's property has been injured." Affirmed.

" 2. That if the increase in the volume and destructiveness of said water is due to the change of the grade of the street and not to the construction of the gutters the plaintiff is not entitled to recover." Affirmed.

" 3. That, in determining whether or not there has been any increase in the volume of water since the construction of the gutters, it is the duty of the jury to make comparison upon the theory that the street and its gutters were kept in proper order and unobstructed before the paved gutters were constructed. *Answer:* As explained by the counsel in his argument to us, we affirm that point. What we understand is meant by this is, that a comparison is to be made between the flow of water in the present condition of the gutter, with the flow of water ordinarily, prior to the placing of the gutters there. In other words, the comparison is not to be made between the present flow of water in the gutter and through the culverts, with the flow of water when the street or water courses, prior to the placing of the gutters there, were temporarily obstructed."

" 4. The allegation in this case being, that the alleged injury to the property of plaintiff was caused by paved gutters constructed by the borough, plaintiff was bound to prove that said gutters were constructed pursuant to legislation on part of said borough, and there being no legitimate proof presented to establish any such legislation, the plaintiff is not entitled to recover. *Answer:* We decline to charge as requested in that point. We think there is evidence from which a jury would be warranted in finding that the gutters were constructed by the borough." [2]

" 5. That the plaintiff cannot recover any damages for any injury to his property, which he might have avoided by the exercise of ordinary care, either in respect to the past or to the future." Affirmed.

" 6. That the jury, if they find that the defendant is liable in this action, may adopt, as the measure of damages, the expense of protecting the property with a wall or pipe from injury on account of the water flowing through the ravine." Affirmed.

Verdict and judgment for plaintiff for $195.    Defendant appealed.

*Errors assigned* were, (1) ruling on evidence, quoting the bill of exceptions and evidence; and (2) answer to defendant's fourth point, quoting point and answer.

*S. J. Strauss, P. A. O'Boyle* and *F. M. Nichols* with him, for appellant.—The only subjects to which the witness's attention had been directed in the examination in chief were the condition of the ravine situated on plaintiff's premises and the effect of the gutter on the quality of water discharged into this ravine.

The only manner in which a borough could lawfully undertake the construction of this improvement is by the adoption of an ordinance directing the work to be done.    Of this proceeding the best evidence is the ordinance or minute book of the council.

*C. F. Bohan, John T. Lenahan* with him, for appellee.— A witness may be cross-examined as to everything to which he has testified, or which is closely connected with it: T. & H. Pr., 5th ed. by Brightly, § 686; Hoffman v. Strohecker, 9 Watts, 183; Jackson v. Litch, 62 Pa. 451; Henderson v. Hydraulic Works, 9 Phila. 100.

There is nothing in our law that demands the proof of the doings of a borough by record evidence and that alone: Dillon, Mun. Corp. § 300; Gearhart v. Dixon, 1 Pa. 224; Dunlap v. Erie Water Com., 151 Pa. 477.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 1, 1893:

One of the specifications in this case is, refusal of the court to sustain objections to questions put,—on cross-examination of defendant's witness,—for the purpose of showing that the gutters, alleged to have caused the injury complained of, were constructed by the defendant borough or under its authority. The objections were, (*a*) that the questions were not proper cross-examination, and (*b*) that the fact sought to be proved was part of plaintiff's case in chief, and could be proved only by the records of the borough council.    The court having over-

ruled said objections, the witness testified in substance that the work of constructing said gutters was done under the supervision of the borough authorities and paid for by the property owners.   In his examination in chief the witness was not asked, nor did he expressly say, by whom the grading and guttering in question were done, but he testified as to the physical nature of the street, along which the gutters were made, the effect of their construction on plaintiff's property, etc., and such was the general character and scope of his testimony in chief that it might be fairly inferred that the work was done by or under the direction of the municipal authorities.   In view of the circumstances, we cannot say there was error in permitting the cross-examination complained of.

While, as a general rule, it is improper to permit a defendant to interject his defence under guise of cross-examination of plaintiff's witness, and vice versa, the range of a cross-examination must, to a very great extent, be left to the sound discretion of the trial judge, and unless that discretion has been plainly abused, to the injury of the party complaining, it is not ground for reversal.   In Jackson v. Litch, 62 Pa. 451, it was held that, in order to reverse for this cause, it must be an extreme case, in which the discretion has been abused, and in which it is apparent the party has been injured; and also, where a witness has stated a fact, be may be asked by the other party to detail all the circumstances, within his knowledge, which qualify it, though they may be new matter and form part of his own case.   As was said in Bank v. Fordyce, 9 Pa. 277, "a party is entitled to bring out every circumstance relating to a fact which an adverse witness is called to prove." In this case, there was no abuse of the discretion with which the trial judge was invested; nor do we think the defendant was prejudiced by the fact elicited on the cross-examination. An examination of plaintiff's testimony shows that fact was either recognized or assumed by witnesses as well as the parties.   One of plaintiff's witnesses was asked, if he remembered " when Main street was graded by the borough," and " when they paved the gutters along there?" and his answer was, " Yes, sir."   Even if the plaintiff had closed his case without introducing any testimony from which the jury would have been warranted in finding the fact, the court, in order to prevent a

miscarriage of justice, would not have refused to permit the plaintiff to call witnesses out of order and prove it.

The only other specification of error is the refusal of the court to affirm defendant's fourth point for charge recited therein.

In declining to charge as requested, the learned judge rightly held there was " evidence from which a jury would be warranted in finding that the gutters were constructed by the borough." The authority of the borough to do so was not, and could not have been, questioned. In view of the evidence, it was for the jury to say whether the proper borough authorities did or did not construct or superintend their construction, etc. It is well settled that the acts of a municipal corporation may be proved otherwise than by its records or some written document: Dillon on Mun. Corp., sec. 300; Bank v. Dandridge, 12 Wheat. 64.

In affirming plaintiff's first point, the learned judge rightly instructed the jury that if they believed " the defendant borough, in constructing its gutters, caused the surface water of a large territory, which did not naturally flow in that direction, to be gathered into a body and precipitated on plaintiff's premises, to the injury of the plaintiff, defendant is liable and plaintiff is entitled to recover." The evidence tended to prove the facts of which this proposition is predicated ; and, by its affirmance, plaintiff's case was fairly presented to the jury. On the other hand, by the affirmance of defendant's first, second, third, fifth, and sixth points, every necessary precaution was taken to properly indicate the limits within which the jury should act. An examination of the record discloses no error that would warrant us in disturbing the judgment.

Judgment affirmed.